557 So.2d 359 (1990)
LAPORTE, SEHRT, ROMIG & HAND, CPA'S
v.
GULF ISLAND OPERATIONS, INC., Gulf Island Marine, Inc., Blue Streak-Gulf Island Partnership, Blue Streak Operations, Inc., Blue Streak Industries, Inc., Blue Streak, Inc., Blue Streak Marine, Inc., Dennis L. Good and Cyril G. Hentze, Jr.
No. 89-CA 0924.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1990.
Rehearing Denied March 21, 1990.
Writ Denied May 18, 1990.
*361 Maumus F. Claverie, Jr., New Orleans, for appellants.
Jerry J. Blouin, New Orleans, for appellees.
Before BYRNES, CIACCIO and WILLIAMS, JJ.
CIACCIO, Judge.
Plaintiff, LaPorte, Sehrt, Romig & Hand, CPA's, (LaPorte, Sehrt) filed suit on open account for the balance due for accounting services rendered against Blue Streak/Gulf Island Partnership in Liquidation, its partners Blue Streak Operations, Inc. and Gulf Island Operations, Inc., and several other related corporations, namely, Blue Streak Industries, Inc., Blue Streak, Inc., Blue Streak Marine, Inc. and Gulf Island Marine, Inc. Also named as defendants in the suit were Jeffrey R. Nicholson and Cyril G. Hentze, Jr., the court-appointed liquidators of the partnership and Dennis L. Good, one of the officers of the Blue Streak entities. Default judgment was rendered against Blue Streak/Gulf Island Partnership, Gulf Island Operations, Inc. and Gulf Island Marine, Inc. on November 24, 1987. During the course of this litigation, defendant Nicholson filed bankruptcy proceedings and all actions pending against him were stayed.
Following a trial on the merits, the trial court rendered judgment for the amount outstanding on the account, $5,114.75, as well as 25% attorney's fees, interest and court costs in favor of plaintiff and against the remaining defendants, Blue Streak Operations, Inc., Blue Streak, Inc., Blue Streak Marine, Inc., Dennis L. Good and Cyril G. Hentze, Jr.
We affirm that part of the judgment which holds Blue Streak Operations, Inc. liable on the suit for open account as well as for attorney's fees, interest and court costs. Because we find liability on the part of Cyril G. Hentze, Jr. for the debt of the partnership in liquidation as well as for attorney's fees, interest and court costs, we affirm that part of the judgment. However, finding no liability on the part of any of the other defendants, we reverse the judgment of the trial court insofar as it finds solidary liability on the part of Dennis L. Good, Blue Streak Marine, Inc. and Blue Streak, Inc.
The Blue Streak/Gulf Island partnership was formed by Articles of Partnership on October 25, 1984 by partners Blue Streak Operations, Inc. and Gulf Island Operations, Inc. for the purpose of operating and managing self-elevating marine oil service and liftboat vessels owned by others pursuant to vessel management contracts. The partnership agreement defined the working relationship between the partnership and other related corporations, defined in the agreement as "affiliates", and provided for a schedule of fees and a non-competition clause. Subsequently, disputes arose between the partners and these affiliated companies regarding the operation of several vessels, distribution of partnership profits or proceeds and overall operations of the partnership.
The accounting services rendered by plaintiff which are made the subject of this suit were initiated by a court order during the judicial liquidation proceedings of the Blue Streak/Gulf Island partnership filed in the 25th Judicial District Court by Gulf Island Operations, Inc. and Gulf Island Marine, Inc. against the partnership, Blue Streak Operations, Inc., Blue Streak Industries, Inc., Blue Streak Marine, Inc., Blue Streak, Inc. and Dennis L. Good. That order, dated November 18, 1985, provides in pertinent part as follows:
"LaPorte, Sehrt, Romig & Hand Certified Public Accountants, by agreement of the parties, are hereby appointed an expert by this Court who are to examine and report thereon at its earliest convenience *362 and in any event within sixty (60) days of November 8, 1985.
"All books and records and/or property of the partnership of Blue Streak/Gulf Island partnership and particularly such as may be found in the possession of or under the control of defendants, Blue Streak Operations [sic], Blue Streak Marine, Inc., Blue Streak Industries, Inc., Blue Streak, Inc. and Dennis L. Good shall be retained in the possession of Blue Streak Marine, Inc. during the pendency of the proceedings in the capacity of the consent keeper until such time as this Court may order, without alteration, modification or distribution.
"The said LaPorte, Sehrt, Romig & Hand shall prepare, using the accrual method of accounting, the following reports and/or statements for the partnership: Balance Sheet as of November 8, 1985; Income Statement for the period January 1 through November 8, 1985; Statement of Changes in Financial Position through November 8, 1985; Cash Flow Statement through November 8, 1985 and fixed assets list of November 8, 1985. Said expert shall cause to be prepared an inventory of all assets of the partnership as they existed on November 8, 1985.
* * * * * *
"Within thirty (30) days of this order the said LaPorte, Sehrt, Romig & Hand (CPA) shall audit all vessel owners accounts and prepare a report regarding the balances thereof, said report shall include a listing of all disputed and undisputed claims or charges ... (Excerpt from Order of the Twenty-Fifth Judicial District Court appointing plaintiff as experts.)"
Following this order of the court, La-Porte, Sehrt began performing the above-described accounting services, and periodically remitted invoices to the liquidators of the partnership for payment. All of these invoices, except for the final bill dated August 31, 1986, were paid by the court-appointed liquidators, Hentze and Nicholson, on behalf of the partnership. This final invoice in the amount of $5,114.75 was not paid by the partnership or the liquidators, and is the outstanding balance on this account which is made the subject of this lawsuit.
Prior to this final billing, on or about August 1, 1986,[1] Clinton Romig, the senior partner (now president) of LaPorte, Sehrt, attended a meeting between himself and the co-liquidators of the partnership, Nicholson and Hentze. The record reflects that during this meeting, the parties entered into a final settlement of the partnership. The terms of this settlement agreement are contained in the Receipt, Release and Settlement Agreement signed by the co-liquidators on August 1, 1986.
Cyril Hentze, the liquidator for Blue Streak Operations, Inc., testified at trial that during this meeting, the payment of the remaining balance due to LaPorte, Sehrt was discussed by Romig, Nicholson and himself. He stated that the exact amount due was unknown as all of the accounting work had not yet been completed by LaPorte, Sehrt at that time. He further testified that during the course of the discussion, Nicholson, the liquidator for Gulf Island Operations, Inc., made a verbal representation that the remaining balance due to LaPorte, Sehrt would be paid by Gulf Island. This remaining balance, amounting to $5,114.75, was never paid by Nicholson or Gulf Island Operations, Inc.
The trial court, in rendering judgment against Blue Streak Operations, Inc., Blue Streak Marine, Inc., Blue Streak, Inc., Dennis Good and Cyril Hentze, stated:
I'll grant the judgment. I think it's abundantly clear that the accounting services were performed on behalf of these entities and it appears to me that the agreement intended to include all of these affiliates, all 5 with the name Blue Streak and I'll grant the judgment.
*363 Although no written reasons were assigned by the trial judge, the following explanation was given by the court:
I don't give written reasons. I'm saying to you on the record I have heard all the testimony in this case, I've inspected every document, and I'm convinced that the parties were aware of this debt outstanding when they settled up these accounts and that all of the entities, the affiliates are solidarily liable for this accounting bill.
Appellants argue on appeal that the trial court erred in finding solidary liability on the part of the Blue Streak entities and the individual defendants Good and Hentze. Appellants also argue that the court erred in granting attorney's fees to plaintiff.

Liability of Blue Streak Operations, Inc., Blue Streak Marine, Inc., and Blue Streak, Inc.
The order of the 25th Judicial District Court in the liquidation proceedings specified that LaPorte, Sehrt would be appointed as an expert to conduct an audit and prepare several reports and/or statements "for the partnership." The purpose of the audit by plaintiff was to assist the partnership in coming to a resolution of its liquidation proceedings. The only two partners of this partnership were Gulf Island Operations, Inc. and Blue Streak Operations, Inc. Clearly, the accounting work performed by LaPorte, Sehrt pursuant to court order was performed for the benefit of the partnership in its liquidation proceedings. Under these circumstances, we find that the debt incurred for accounting services rendered was a partnership debt.
Liability for partnership debts is established by La.C.C.Art. 2817 which provides:
A partnership as principal obligor is primarily liable for its debts. A partner is bound for his virile share of the debts of the partnership but may plead discussion of the assets of the partnership.
The Blue Streak/Gulf Island partnership, then, is primarily liable for the debt incurred for accounting services rendered to the partnership. The partners, Blue Streak Operations, Inc. and Gulf Island Operations, Inc. would be bound for only their virile share, or one-half of the partnership debt, but the articles of partnership made each partner liable in solido for partnership debts. Article XII of the partnership agreement provides in part as follows:
Each Partner signatory hereto or subsequently admitted into the Partnership agrees that he shall be and shall remain liable in solido for any obligations and liabilities of the Partnership to the extent the Partnership has incurred personal liability thereon but not to the extent the Partnership's liability is merely in rem.

Based on the foregoing agreement made by the partners in the Articles of Partnership, we find that the trial court was correct in holding that Blue Streak Operations, Inc. was solidarily liable for the debt of the partnership.
The remaining Blue Streak entities which were cast in judgment by the trial court were not members of the partnership but were separate and distinct legal entities that were doing business with the partnership. The Blue Streak and Gulf Island affiliates had no interest in the outcome of the liquidation proceedings other than that of any other debtor or creditor. Accordingly, they may not be held liable for a debt incurred as a result of the partnership liquidation.
The 25th Judicial District Court, in appointing LaPorte, Sehrt, stated that the accounting work was to be done "for the partnership." The partnership affiliates were named in the order solely for the purpose of retaining their books and records for audit purposes. This action does not make these affiliates liable for any debt incurred by and for the benefit of the partnership. Apparently, plaintiff recognized this fact as the demand letter of LaPorte, Sehrt's attorney dated January 23, 1987 made claim for payment against the Blue Streak/Gulf Island partnership, its partners, Blue Streak Operations, Inc. and Gulf Island Operations, Inc., and against Hentze and Nicholson as liquidators, and did not claim that any other *364 persons or corporations were responsible for these services. For the foregoing reasons, we find that there is no liability of Blue Streak Marine, Inc. and Blue Streak, Inc., and insofar as the judgment of the trial court holds otherwise, we reverse.

Liability of Dennis Good
With regard to the liability of Dennis Good, the record reveals that Good was the president of four of the Blue Streak entities and was part-owner of one. Good was named as a defendant in the liquidation proceedings and the court in those proceedings ordered Good to retain his books and records during the audit to be performed by LaPorte, Sehrt.
The law in this state is clear that a shareholder, officer or director of a corporation shall not be held personally liable for a corporate obligation except in cases of fraud or deceit, or where there has been a piercing of the corporate veil. La.R.S. 12:93(B); 12:95; Lone Star Industries v. American Chemical, 461 So.2d 1063 (La. App. 4th Cir.1984).
In the present case, plaintiff makes no allegations in his petition, nor was any evidence produced at trial, of any fraud on the part of Good, as a corporate officer of Blue Streak Operations, Inc. or as an officer of the partnership affiliates which would make him personally liable for the debt of the partnership. There is also no evidence in the record of any support for a piercing of the corporate veil which would hold Good personally liable for the partnership debts of Blue Streak Operations, Inc. We conclude that the judgment of the trial court in finding Dennis Good solidarily liable for the balance due to LaPorte, Sehrt is manifestly erroneous.

Liability of Cyril G. Hentze, Jr.
Cyril G. Hentze, Jr. was appointed by the 25th Judicial District Court to serve as liquidator for Blue Streak Operations, Inc., one of the partners in the Blue Streak/Gulf Island partnership. The duties of the liquidator were not specified in the court order or articles of partnership. In the absence of a contrary agreement, a partnership is liquidated in the same manner and according to the same rules that govern the liquidation of corporations. La.C.C. article 2834.
In the performance of his duties, the liquidator is bound to exercise the care of a fiduciary in the listing, custody, possession, control, disposition, accounting and distribution of the corporate money and property. La.R.S. 12:145(G); Noe v. Roussel, 310 So.2d 806 (La.1975).
La.R.S. 12:145(F) specifically prohibits a liquidator from distributing net assets while there are corporate debts outstanding. Drenning v. Kuebel, Inc., 339 So.2d 752 (La.1976). That statute provides as follows:
Any net assets remaining after paying or adequately providing for the payment of all debts and liabilities of the corporation, including all costs and expenses of the liquidation any and all contingent liabilities of which the liquidator has knowledge, shall be paid by the liquidator to the shareholders according to their respective rights and preferences. The share of any shareholder who cannot be found shall be delivered to the collector of revenue in accordance with the provisions of R.S. 9:151.
In the event that there are contingent liabilities for which provision has been made as above, the liquidator shall not be dismissed until the contingent liabilities and debts have been paid or settled in full.
Under the statute, a liquidator is required to assemble all assets, to pay all debts as far as the assets will permit, to terminate all liabilities, and only then to pay the surplus, if any, to the stockholders or partners. Drenning v. Kuebel, Inc., Id. at 755.
In the present case, Cyril Hentze testified that he was aware at the final meeting between Jeff Nicholson, Clinton Romig and himself that there was an outstanding balance owed by the partnership to LaPorte, Sehrt. He stated that although the exact amount due was not known by the parties, *365 Jeff Nicholson made a verbal representation that the final bill of LaPorte, Sehrt would be paid by Gulf Island Operations, Inc. Hentze also testified that Romig agreed to this arrangement for the payment of the final bill.
Hentze testified as follows:
By Hentze:
A. At the final meeting at Mr. Romig's office on July 24th the subject came up and at the time we pretty much knew what funds would be available and where they were going, and the unknown factor was what the final billing was from LaPorte, Sehrt and at that point Jeff Nicholson said just to simplify things why don't we let Gulf Island pay the final bill for LaPorte, Sehrt.
The Court:
Did you reduce that to a writing, the two of you and sign it?
The Witness:
No, we discussed it with Mr. Romig.
The Court:
But you didn't reduce it to a writing?
The Witness:
No. It was a verbal agreement.
The Court:
All right, let's go on.
The Witness:
Mr. Romig agreed that that would be satisfactory with his firm and that being taken care of we agreed on the final distribution of assets.
The Court:
Why didn't you write it in, then, if you had all of these other debts and obligations written in, it would have been a simple matter to write in the amount owed for accounting, why didn't you
The Witness:
It was an unknown amount. It was an amount that was already accrued plus work to be done.
The Court:
Why didn't you write in the amount that had already accrued and allocated to some person?
The Witness:
Well, when Mr. Romig and Jeff agreed that the final bill be paid from Gulf Island Marine it, you know, became a moot point to me how much it was.
The trial judge, who was in the best position to observe the demeanor of the witness, apparently did not believe the testimony given by Hentze concerning this arrangement. There is no evidence in the record, other than the testimony of Hentze, to show that Romig agreed to an arrangement whereby Gulf Island Operations, Inc. would be solely responsible for the final bill of LaPorte, Sehrt. Although Romig was questioned at trial concerning his knowledge of this arrangement, the trial court refused to allow such testimony based on the fact that Nicholson did not testify at the trial. The trial court allowed the testimony to be proffered and appellants filed into the record a proffer of testimony.
We have reviewed the contents of the proffer and conclude that it is insufficient to show that Romig agreed to an arrangement whereby Gulf Island would be solely responsible for the final bill. The proffer only indicates that a conversation concerning the final bill took place at the meeting and that Gulf Island promised to take care of it, but it does not claim that Romig agreed to such a proposition or that he released the other parties from their liability for payment.
Absent any competent evidence that Romig on behalf of LaPorte, Sehrt agreed to hold only Gulf Island responsible for its final bill, we conclude that Hentze breached his fiduciary duty as a liquidator by distributing the net assets to the partners while there was still a partnership debt outstanding. Although it may be true that Nicholson on behalf of Gulf Island agreed to pay the bill, Hentze nonetheless had a duty as liquidator to insure that the bill was actually paid or that the partnership was released from this obligation before the assets of the partnership were distributed. Having failed to do so, Hentze breached his fiduciary duty as liquidator of the partnership, and made himself personally liable for the partnership debt.
Attorney's Fees
The appellants also argue that the trial court erred in awarding attorney's *366 fees against the defendants. Attorney's fees in a suit on open account are allowed by La.R.S. 9:2781(A) which provides, in pertinent part:
When any person fails to pay an open account within fifteen days after receipt of written demand therefor correctly setting forth the amount owed, that person shall be liable to claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.
Appellant contends that the requirements of this statute have not been met as the amount set forth in the written demand was not the correct amount owed and the demand letter was not properly sent to each of the defendants.
The amount of final invoice as stated in the demand letter of LaPorte, Sehrt dated January 23, 1987 is $5,114.75. Appellants contend that the proper amount owed as evidenced by plaintiff's work in progress journals was $5,154.75. However, Clinton Romig testified at trial that the $40.00 difference was never billed to the partnership because it was such an insignificant amount. Therefore, the correct amount owed was $5,114.75, the amount specified in the demand letter. Appellants' argument has no merit.
The record indicates that a copy of the demand letter was mailed by LaPorte, Sehrt to Cyril G. Hentze, Jr. and Jeffrey R. Nicholson for "accounting services rendered by LaPorte, Sehrt, Romig and Hand to Blue Streak-Gulf Island Partnership in liquidation." The demand letter was properly addressed to the liquidators as the representatives of the partnership. The liquidators were the parties responsible for making payments for debts incurred by the partnership. We therefore find that the demand letter of LaPorte, Sehrt was in compliance with the requirements of La. R.S. 9:2781(A), and that plaintiff is thereby entitled to receive attorney's fees.
For the foregoing reasons, the judgment of the trial court is affirmed insofar as it holds Blue Streak Operations, Inc. solidarily liable for the bill of LaPorte, Sehrt in the amount of $5,114.75, and for 25% attorney's fees, interest and court costs. The judgment is likewise affirmed insofar as it holds Cyril G. Hentze, Jr. solidarily liable for the amount due, $5,114.75, as well as for 25% attorney's fees, interest and court costs. The judgment, however, is reversed insofar as it holds Dennis L. Good, Blue Streak Marine, Inc. and Blue Streak, Inc. liable for the charges of LaPorte, Sehrt, and plaintiff's claims against them are dismissed with prejudice. All costs of this appeal and in the trial court are assessed against those defendants who are cast in judgment.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] The actual date of the meeting is in dispute. Romig testified the meeting occurred on August 1, 1986. Hentze testified that the date of the meeting was July 24, 1986. Both parties agree that it was the final meeting between the parties.